UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____

IN RE:
MARY J. NOONAN AND
DAVID F. NOONAN,                                        Chapter 7
          DEBTORS.                             Case No. 13-15420-WCH

_____

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

       The matter before the Court is the "Motion to Avoid Judicial Lien Writ of Attachment of Deborah Hutton" (the "Motion") filed by Mary J. Noonan and David F. Noonan (the "Debtors") and the opposition thereto (the "Opposition") filed by Deborah Hutton ("Hutton"). Through the Motion, the Debtors seek to avoid a judicial lien on their principal residence pursuant to 11 U.S.C. § 522(f) to the extent that it impairs their homestead exemption. Hutton opposes, asserting that the Debtors are not entitled to claim the full amount of a declared homestead exemption under Massachusetts law because they acquired it by fraud. For the reasons set forth below, I will grant the Motion.

**II. BACKGROUND**

       The facts are not in dispute. On September 12, 2013, the Debtors filed a voluntary Chapter 7 petition with all the requisite schedules. On "Schedule A – Real Property" ("Schedule A"), the Debtors listed a single family residence located at 135 Highland Drive in Centerville, Massachusetts (the "Property") with a value of $225,272.00. "Schedule D – Creditors Holding Secured Claims" ("Schedule D") reflects that the Property was subject to the following encumbrances on the petition date:

1

| Creditor | Nature of Lien | Amount | Date of Recording |
|---|---|---|---|
| TD Bank | First Mortgage | $11,827.00 | 9/26/2000 |
| Internal Revenue Service (the "IRS") | Tax Lien | $126,910.00 | 3/4/2004 |
| Hutton | Attachment | $10,000.00 | 5/25/2011 |
| Town of Barnstable | Tax Taking | $402.95 | 3/26/2012 |
| Portfolio Recovery Associates, LLC ("Portfolio") | Execution | $2,209.10[1] | 7/27/2013 |

On "Schedule C – Property Claimed as Exempt" ("Schedule C"), the Debtors claimed an exemption in the Property in the amount of $500,000.00 pursuant to Mass. Gen. Laws ch. 188, § 1. The Declaration of Homestead attached to the Motion reflects that it was recorded in the Barnstable Land Court Registry on April 28, 2011.

The Debtors appeared at the meeting of creditors held pursuant to 11 U.S.C. § 341 (the "Meeting of Creditors") on October 15, 2013. On the same date, Donald Lassman, the duly appointed Chapter 7 trustee, filed a Chapter 7 Trustee's Report of No Distribution, indicating that there is no property available for distribution to the Debtors' creditors. A discharge entered on December 20, 2013.

On November 22, 2013, prior to the entry of their discharge, the Debtors filed the Motion. On December 11, 2013, Hutton filed the Opposition, alleging, *inter alia*, that the Debtors' Declaration of Homestead had been recorded through deceit and for a fraudulent purpose. In the Opposition, she explains that her motion seeking a real estate attachment was initially scheduled for hearing before the Orleans District Court on April 25, 2011, but was continued to May 16, 2011 at the request of Mary Noonan's state court counsel, Attorney Vicki Mitchell ("Attorney Mitchell"), with the assent of her own counsel.[2] Hutton further alleges that at the Meeting of Creditors, David Noonan testified that, on the advice of Attorney Mitchell, he

---

[1] Portfolio's execution was avoided by an order of this Court dated November 19, 2013 without an objection.

[2] At the hearing on the Motion, Hutton's counsel stated that he assented to the continuance because the reason given for the request was that Attorney Mitchell had a scheduling conflict.

2

recorded the Declaration of Homestead on April 28, 2011, three days after the first scheduled hearing on the motion for a real estate attachment. In hindsight, Hutton now concludes that the sole purpose of the Attorney Mitchell's request for the continuance was to afford the Debtors an opportunity to record their Declaration of Homestead before the Orleans District Court granted the attachment so as to avoid the pre-existing lien exception under Mass. Gen. Laws ch. 188, § 8.[3]

On December 20, 2013, I held a hearing on the Motion. After the conclusion of oral arguments by both parties, I took the matter under advisement.

### III. POSITIONS OF THE PARTIES

A. The Debtors

The Debtors assert that given the value of the Property, the amount of the liens on the Property, and the extent of the homestead exemption, Hutton's attachment is fully avoidable pursuant to 11 U.S.C. § 522(f). They deny that their Declaration of Homestead was recorded by fraud or deceit, and further argue that the United States Court of Appeals for the First Circuit has previously held that the pre-existing lien exception to the Massachusetts Homestead Statute[4] is preempted by 11 U.S.C. §§ 522(c) and (f), rendering the timing issue irrelevant.[5] Finally, to the extent that Hutton challenges the validity of the IRS tax lien or their valuation of the Property, the Debtors contend that neither issue would have any impact on the avoidability of Hutton's attachment.

---

[3] *See* Mass. Gen. Laws ch. 188, § 8 ("No estate of homestead shall affect a mortgage, lien or other encumbrance previously existing, except as provided in this chapter.").

[4] Mass. Gen. Laws ch. 188, § 1 *et seq.*

[5] *See Patriot Portfolio, LLC v. Weinstein (In re Weinstein)*, 164 F.3d 677, 682 (1st Cir. 1999).

3

B. Hutton

Hutton raises several objections to the Motion. From the outset, she contends that the Debtors are undervaluing the Property because the Town of Barnstable's assessed value of the Property is $243,600.00. Next, she asserts that IRS tax lien is ineffective because it was not properly recorded in the registered land section of the Barnstable County Registry of Deeds and does not appear on the Certificate. Alternatively, Hutton argues that the IRS tax lien is void as a matter of law due to the expiration of the statute of limitations.

The primary thrust of Hutton's objection is that the Debtors are not entitled to a declared homestead exemption in the amount of $500,000.00 due to the alleged deceit and fraud surrounding its recordation. But for the continuance, Hutton argues, she would have had a pre-existing lien which, under Massachusetts law, would not have been affected by the Debtors' homestead. Relying on 11 U.S.C. § 522(o), she asserts:

> [t]here can be no dispute that . . . the Debtor "disposed" of the non-exempt property by increasing the exemption by $375,000.00 on April 28, 2011 by recording the Declaration of Homestead, . . . prior to the recording $375,000.00 in value was "non-exempt," and . . . the Debtor disposed of the property with the specific intent to hinder, delay, or defraud Deborah Hutton.[6]

Hutton explains that the final element, that "some of the proceeds from the sale of the non-exempt property were used to buy a new homestead, improve an existing homestead, or reduce the debt associated with an existing homestead," does not apply because the Debtors did not convey the Property, but rather recorded a Declaration of Homestead.[7] Therefore, she posits that the Debtors are entitled to only the "automatic homestead exemption" of $125,000.00 pursuant to Mass. Gen. Laws ch. 188, § 1.

---

[6] Opposition, Docket No. 22 at 6.

[7] *Id.* (*quoting In re Corbett*, 478 B.R. 62, 69 (Bankr. D. Mass. 2012)).

Based on all these considerations, Hutton argues that her attachment is not avoidable.

**IV. DISCUSSION**

    A. <u>The Homestead Exemption</u>

Pursuant to 11 U.S.C. § 522(l), exemptions listed on Schedule C are presumptively valid in the absence of an objection.[8] A creditor may challenge the validity of an exemption alleged to be impaired by a lien in the context of an objection to a lien avoidance motion under 11 U.S.C. § 522(f),[9] but Fed. R. Bankr. P. 4003(c) nevertheless places the burden to prove that the exemption is not properly claimed on the objecting party.[10]

Rights to exemptions are fixed as of the date of the petition.[11] Under 11 U.S.C. § 522(b), "an individual debtor may exempt from property of the estate the property listed in . . . paragraph (3) of this subsection," which allows a debtor to claim the exemptions provided for under applicable state law.[12] Pursuant to Mass. Gen. Laws ch. 188, § 3(a),

> [a]n estate of homestead to the extent of the declared homestead exemption in a home may be acquired by 1 or more owners who occupy or intend to occupy the home as a principal residence. The estate of homestead shall be created by a written declaration executed and recorded in accordance with section 5.[13]

---

[8] 11 U.S.C. § 522(l) ("Unless a party in interest objects, the property claimed as exempt on such list is exempt.").

[9] *See* Fed. R. Bankr. P. 4003(d).

[10] Fed. R. Bankr. P. 4003(c). *See Shamban v. Perry (In re Perry)*, 357 B.R. 175, 178 (B.A.P. 1st Cir. 2006).

[11] 11 U.S.C. § 522(b)(3)(A).

[12] 11 U.S.C. § 522(b)(1), (3)(A).

[13] Mass. Gen. Laws ch. 188, § 3(a).

A "declared homestead exemption" is defined as "an exemption in the amount of $500,000 created by a written declaration" with respect to a "home."[14] Even in the absence of a properly recorded "declared homestead exemption," however, Mass. Gen. Laws ch. 188, § 4 provides that

> an estate of homestead to the extent of the automatic homestead exemption shall exist in a home for the benefit of the owner and the owner's family members who occupy or intend to occupy the home as a principal residence.[15]

An "automatic homestead exemption," in turn, is defined as

> an exemption in the amount of $125,000 pursuant to section 4; provided, however, that: (1) with respect to a home owned as joint tenants or as tenants by the entirety, the automatic homestead exemption shall remain whole and unallocated between the owners, provided that the owners together shall not be entitled to an automatic homestead exemption in excess of $125,000; and (2) with respect to a home owned by multiple owners as tenants in common or as trust beneficiaries, the automatic homestead exemption shall be allocated among all owners in proportion to their respective ownership interests.[16]

In the present case, there is no dispute that the Debtors are "owners,"[17] that the Property is a "home,"[18] or that they occupy it as a "principal residence."[19] Accordingly, there is no question that the Debtors are entitled to a homestead exemption with respect to the Property.

---

[14] Mass. Gen. Laws ch. 188, § 1.

[15] Mass. Gen. Laws ch. 188, § 4.

[16] Mass. Gen. Laws ch. 188, § 1.

[17] *See* Mass. Gen. Laws ch. 188, § 1 ("'Owner', a natural person who is a sole owner, joint tenant, tenant by the entirety, tenant in common, life estate holder or holder of a beneficial interest in a trust.").

[18] *See* Mass. Gen. Laws ch. 188, § 1 ("'Home', the aggregate of: (1) any of the following: (i) a single-family dwelling, including accessory structures appurtenant thereto and the land on which it is located; (ii) a 2 to 4-family dwelling, including accessory structures appurtenant thereto and the land on which it is located; (iii) a manufactured home as defined in section 32Q of chapter 140; (iv) a unit in a condominium, as those terms are defined in section 1 of chapter 183A, that is used for residential purposes; or (v) a residential cooperative housing unit established pursuant to chapters 156B, 157B, 180 or otherwise; (2) the sale proceeds as provided in clause (1) of subsection (a) of section 11; and (3) the proceeds of any policy of insurance insuring the home against fire or other casualty loss as provided in clause (2) of said subsection (a) of said section 11.").

[19] *See* Mass. Gen. Laws ch. 188, § 1 ("'Principal residence', the home where an owner, and the owner's family if applicable, resides or intends to reside as the primary dwelling; provided, however, that no person shall hold concurrent rights in more than 1 principal residence.").

Instead, the issue is whether the Debtors have a "declared homestead exemption" in the amount of $500,000.00 or only an "automatic homestead exemption" in the amount of $125,000.00.

Hutton asserts that the Debtors are not entitled to a declared homestead exemption by operation of 11 U.S.C. § 522(o). Section 522(o) of the Bankruptcy Code was enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") to limit the value of a debtor's homestead exemption in certain circumstances.[20] It provides in relevant part:

> (o) For purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the value of an interest in—
>
> > (1) real or personal property that the debtor or a dependent of the debtor uses as a residence; [or]
>
> > \* \* \*
>
> > (4) real or personal property that the debtor or a dependent of the debtor claims as a homestead;
>
> shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt,

---

[20] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. § 101, *et seq*. As cogently explained by the United States Bankruptcy Appellate Panel for the Tenth Circuit:

> The addition of § 522(o) to the Bankruptcy Code was "intended to strike a balance between the rights of debtors and creditors in states with unlimited homestead exemptions ... and to make clear that abusive pre-bankruptcy planning will not be tolerated at the expense of creditors." However, even after BAPCPA's amendments, "[s]ection 522 continues to adopt the position favorably viewed by the Code drafters that the mere conversion of nonexempt property into exempt property, without fraudulent intent, does not deprive the debtor of exemption rights in the converted property." Ultimately, it appears that the purpose of adding § 522(o) and § 522(p) in 2005 was the attempt by Congress to address the pre-BAPCPA "mansion loophole" and to limit the value of homestead exemptions when there is fraud. This lends support to our interpretation of § 522(o)—that the statute was enacted to prevent the fraudulent attempt to build up equity in a homestead.

*Soulé v. Willcut (In re Willcut)*, 472 B.R. 88, 94 (B.A.P. 10th Cir. 2012) (footnotes omitted).

7

under subsection (b), if on such date the debtor had held the property so disposed of.[21]

In *In re Corbett*, Judge Feeney of this district recognized that a party must establish the following four elements to sustain an objection under 11 U.S.C. § 522(o):

> (1) the debtor disposed of property within the 10 years preceding the bankruptcy filing;
>
> (2) the property that the debtor disposed of was nonexempt;
>
> (3) some of the proceeds from the sale of the nonexempt property were used to buy a new homestead, improve an existing homestead, or reduce the debt associated with an existing homestead; and
>
> (4) the debtor disposed of the nonexempt property with the intent to hinder, delay or defraud a creditor.[22]

Despite her detracting allegations, Hutton is unable to establish all four of the requisite elements under 11 U.S.C. § 522(o). Indeed, she admits that the third element "does not apply to the instant case," dooming her argument from the outset.[23] Ironically, the reason the third element does not exist in this case is because the Debtors did not "dispose[] of" nonexempt property as required by the first element. In *In re Lyons*, Judge Rosenthal of this district addressed this very issue and concluded that where a debtor does "not sell, or otherwise transfer, any property . . . [but] merely designate[s] his Property as a homestead," the "recording [of] a homestead, which is essentially taking advantage of a [sic] exemption available under state law,

---

[21] 11 U.S.C. § 522(o).

[22] *In re Corbett*, 478 B.R. at 69 (*quoting In re Presto*, 376 B.R. 554, 568 (Bankr. S.D. Tex. 2007)).

[23] Opposition, Docket No. 22 at 6.

8

is not analogous to these types of transfers" and does not fall within 11 U.S.C. § 522(o).[24] His reasoning is unassailable and comports with both the text and purpose of this provision.[25]

I further note that while Hutton makes much of the timing of the recordation of the Declaration of Homestead in support of her claim of fraud, it is not reasonable to infer fraud from these circumstances once a bankruptcy petition has been filed. Although Mass. Gen. Laws ch. 188, § 8 provides that a homestead exemption is ineffective as to pre-existing liens, the First Circuit has held that the prior debt exception in the Massachusetts Homestead Statute is preempted by the Bankruptcy Code.[26] In other words, even if Hutton had obtained her attachment before the recording of the Declaration of Homestead, the attachment would still be subordinate to the homestead.

In sum, Hutton has not carried her burden and I find that the Debtors are entitled to their declared homestead exemption in the amount of $500,000.00.

B. <u>Lien Avoidance Pursuant to 11 U.S.C. § 522(f)</u>

Having determined the extent of the Debtors' homestead exemption, I must now turn to the question of lien avoidance. Pursuant to 11 U.S.C. § 522(f), a debtor may avoid the fixing of a judicial lien "on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled. . . ."[27] Section 522(f)(2)(A) of the Bankruptcy Code provides the following formula to determine whether a debtor's exemption is impaired:

---

[24] *In re Lyons*, 355 B.R. 387, 390 (Bankr. D. Mass. 2006).

[25] *See* n. 20, *supra*.

[26] *In re Weinstein*, 164 F.3d at 682.

[27] 11 U.S.C. § 522(f)(1).

> For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of --
> > (i) the lien;
> > (ii) all other liens on the property; and
> > (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.[28]

Applying the formula to Hutton's attachment, the sum of her attachment ($10,000.00), all other liens on the Property ($11,827.00 + $126,910.15 + $402.95 = $139,140.10), and the homestead exemption that they could claim in the absence of liens ($500,000.00) is $649,140.10. This exceeds the value of the Debtors' interest in Property in the absence of any liens, which is only $225,272.00, by $423,868.10. Therefore, Hutton's attachment is fully avoidable under 11 U.S.C. § 522(f). Although Hutton disputes the validity of the IRS tax lien and asserts that Town of Barnstable's assessed value of $243,600.00 is more accurate than the Debtors' value, the result would be the same.[29]

---

[28] 11 U.S.C. § 522(f)(2)(A).

[29] Substituting Hutton's figures into the formula, the sum of her attachment ($10,000.00), all other liens on the Property, but not including the IRS tax lien ($11,827.00 + $402.95 = $12,229.95), and the homestead exemption that they could claim in the absence of liens ($500,000.00) is $522,229.95. This exceeds the Town of Barnstable's assessed value of $243,600.00 by $278,629.95.

## V. CONCLUSION

In light of the foregoing, I will enter an order granting the Motion.

_____
William C. Hillman
United States Bankruptcy Judge

Dated: January 15, 2014

Counsel Appearing:

    Peter M. Daigle, The Law Office of Peter M. Daigle, Centerville, MA,
        for the Debtors
    Michael J. Heineman, Mingace & Heineman, P.C., Framingham, MA,
        for Deborah Hutton